IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEAN LONG, | CASE NO.: 4:09 CV 1910 |
| Plaintiff, | |
| v. | JUDGE DONALD C. NUGENT |
| VENTRA SALEM LLC, | |
| | MEMORANDUM OPINION |
| Defendant. | |

This matter is before the Court on the Motion of Defendant Ventra Salem LLC ("Ventra") for summary judgment. (ECF # 22). For the reasons that follow, Defendant Ventra's Motion for Summary Judgment is GRANTED.

**FACTS**[1]

Plaintiff, Jean Long, filed this action against Defendants Ventra Salem, LLC and Community Insurance Company d/b/a Anthem Blue Cross-Blue Shield on June 24, 2009, in the Court of Common Pleas for Columbiana County, Ohio. The Complaint alleges claims of wrongful termination based on age in violation of Ohio Rev. Code § 4112.14 (Count One); violation of public policy based on age discrimination (Count Two); civil violation against Ventra pursuant to 29 U.S.C. § 1166(a)(2) (Count Three); and civil violation against Community

---

[1] The facts as stated in this Memorandum and Order are taken from the Parties' submissions. Those material facts that are controversial and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

Insurance Company pursuant to 29 U.S.C. §1166(c) (Count Four). Defendants removed this action to this Court on August 13, 2009, asserting that this action includes a federal claim giving this Court jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff dismissed her claims against Defendant Community Insurance Company on March 16, 2010 and now proceeds only against Defendant Ventra on Counts One through Three.

Ventra, located in Salem, Ohio, is a company that manufactures plastic molding parts used in the automotive industry. (Ravelli Aff. ¶3; Ravelli Dep. at p. 18). Ventra has been operating the plant in Salem, Ohio since March 19, 2008, when Ventra purchased certain assets of Blackhawk Automotive Plastics, Inc. ("Blackhawk") in a transaction approved by the United States Bankruptcy Court for the Northern District of Ohio. In that transaction, Ventra acquired Blackhawk's assets, "free and clear of all liens, claims, interests and encumbrances." 11 U.S.C. § 363(m).

Plaintiff Jean Long is 78 years old. She began working at the Salem plant now owned by Ventra on October 24, 1969.[2] (Complaint, ¶8). Before Ventra's purchase of assets from Blackhawk, Plaintiff worked as an Inspector in the quality control department on the afternoon shift from 3:00 p.m. to 11:00 p.m. (Long Depo. At 29, 53) As of March 18, 2008, three employees worked in the inspector role on the afternoon shift: Plaintiff, Shannon Smith and Lucky Miller. Ms. Smith and Mr. Miller were under 40. (Long Depo. At 29, 53, 55).

In the weeks prior to Ventra's purchase of Blackhawk's assets in March 2008, representatives of Ventra held meetings at the Salem plant with all employees. At those

---

[2] The Salem plant has been owned by several different companies over the years. Mrs. Long was hired by Warren Molded Plastics in 1969. Subsequent owners of the plant were Worthington Custom Plastics and Blackhawk Automotive Plastics.

2

meetings, the employees learned that Ventra was considering the asset purchase and were told that in order to be considered for employment, employees would have to complete an application for employment with Ventra, as well as insurance forms and other preemployment paperwork. (Long Depo. at 68-69, 71-72, 75-76, 82-84) No one at the meetings made any promise that everyone would be hired by Ventra. (Id. at 72-73). Mrs. Long completed the paperwork and applied for a job at Ventra. (Id. at 84-85). Plaintiff sought the same position that she worked at Blackhawk–quality control inspector on the afternoon shift. Effective March 18, 2008, all employees of Blackhawk, including Plaintiff, lost their employment when Ventra's purchase of Blackhawk's assets became final. (Ravelli Aff. ¶ 4).

On that same day, Scott Tuel, general manager for Ventra, informed Plaintiff that Ventra decided not to hire her. (Long Depo at 81, 103) Mr. Tuel had reviewed information regarding employee attendance or work related disciplinary issues. (Tuel Depo at 79-80). Mr. Tuel met with Plaintiff's manager in the quality department prior to March 19, 2008 and was informed that Plaintiff had attendance problems. (Id. at 91-92, 84-85, 87) Thereafter, Mr. Tuel reviewed Plaintiff's attendance records. (Id. at 94-96). Beginning on July 30, 2006 through March 18, 2008, Plaintiff missed a total of 1,787.6 hours of work or approximately 223.45 days in one year and eight months. (Long Depo at 65-66, Ex. 4) Mrs. Long suffered from cancer during the last four years of her employment. (Long Depo at 28, 52). Based on those attendance records, Mr. Tuel, the sole decision maker, determined that Ventra would not hire Plaintiff for attendance related reasons. (Tuel Depo at 87, 98, 109, 118-19; Ravelli Depo at 41; Brown Depo at 95).

Lucky Miller and Shannon Smith were hired by Ventra to work the afternoon shift as quality inspectors on March 19, 2008. Both of these employees were absent much less than

3

Plaintiff. Mr. Miller had missed a total of 60 hours in 11 months and Ms. Smith missed a total of 32.6 hours in seven months. (Ravelli Aff. ¶¶ 8, 9)

After her termination, Plaintiff received a COBRA election form from Ventra's HR Director Diana Ravelli. (Long Depo at 93-99). Mrs. Long alleges that her friend, Mrs. McClish called Diana Ravelli on Mrs. Long's behalf with questions and was informed that Plaintiff's insurance had been terminated on March 18, 2008 and that she was too old to get COBRA. (Long Depo at 95-97) Mrs. Long did not complete the COBRA enrollment form. (Id. at 100). Mrs. Long also alleges that Ms. Ravelli asked her when she was going to retire every time she would return with a doctor's slip after time off. (Id. at 112).

Defendant Ventra has moved for summary judgment on all of Plaintiff's claims against it–age discrimination in violation of Ohio Rev. Code § 4112.14; wrongful discharge in violation of public policy based on the state age discrimination statute; and violation of the COBRA notification requirement, 29 U.S.C. § 1166(a)(2). The Motion is fully briefed and ready for decision.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

4

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't*

5

*of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Fed. R. Civ. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **ANALYSIS**

### **A. COBRA CLAIM**

Defendant has moved for summary judgment on Plaintiff's claim that she did not receive notice of her COBRA rights as required under the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1166(a)(2). Defendant contends that Plaintiff's COBRA claim fails because Mrs. Long has admitted in deposition that she received a COBRA notice. Plaintiff has not responded to Defendant's motion as to her COBRA claim. Thus, it appears that Plaintiff concedes that she received notice of her COBRA rights and has abandoned this claim. Accordingly, Defendant is entitled to summary judgment on Plaintiff's COBRA claim (Count Three).

**B. PUBLIC POLICY CLAIM**

Similarly, Plaintiff has not responded to Defendant's argument that her claim for wrongful discharge in violation of public policy based on age discrimination fails as a matter of law. The Ohio Supreme Court has held that "[a] common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination does not exist, because the remedies in R.C. Chapter 4112 provide complete relief for a statutory claim for age discrimination." *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311, 875 N.E.2d 36, 38 (2007). Further, courts in this district, citing *Leininger*, have declined to recognize a claim for wrongful discharge in violation of public policy based upon discrimination that is actionable under § 4112. See *Lockett v. Marsh USA, Inc*., 2007 U.S. Dist. LEXIS 73939, at *41 (N.D. Ohio Oct. 3, 2007 (Lioi, J.)(age discrimination); *Grair v. Ohio Bell Tel. Co.*, 2009 U.S. Dist. LEXIS 77023, at *5 (N.D. Ohio Aug. 28, 2009)(Gwin, J.)(race discrimination). Defendant's Motion for Summary Judgment on Plaintiff's public policy claim (Count Two) is granted without opposition.

**C. AGE DISCRIMINATION IN VIOLATION OF R.C. § 4112**

Finally, Defendant moves for summary judgment on Plaintiff's age discrimination claim under R.C. § 4112. R.C. §4112 prohibits employers from discriminating against employees on the basis of age. R.C. §4112.99.[3] "It is well established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination." *Mitchell v. Toledo*

---

[3]

As the elements and burden of proof in an Ohio age discrimination action are the same as in a federal action, Ohio courts will look to cases interpreting federal discrimination laws when deciding a claim under R.C. § 4112. *Barker v. Scovill, Inc*., 6 Ohio St.3d 146 (1983); *Little Forest Med Center v. Ohio Civil Rights Comm*., 61 Ohio St.3d 607 (1991); Plumbers & *Steamfitters Joint Apprenticeships Comm. v. Ohio Civil Rights Comm*., 66 Ohio St.2d 192 (1981).

*Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citations omitted). A plaintiff may establish a claim of age discrimination in one of two ways--via indirect or direct evidence. First, a plaintiff may establish his case "by presenting credible, direct evidence of discriminatory intent." *Mitchell*, 964 F.2d at 582 n.4. In the absence of direct evidence of discriminatory intent, a plaintiff may establish a *prima facie* case of discrimination by showing that (1) she was a member of a protected class; (2) she applied for and was not hired for a job; (3) she was qualified for the position; and, (4) a similarly situated person who was not in the plaintiff's protected class was hired for the job. *Seay v. TVA,* 339 F.3d 796, 802 (6th Cir. 2003).[4]

In applying this test, although the burden of persuasion remains with the plaintiff, the burden of production shifts between the parties. The Sixth Circuit has described this approach as follows: "(1) the plaintiff must establish a prima facie case of racial discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was in fact pretextual." *Harrison v. Metropolitan Gov't of Nashville and Davidson County*, 80 F.3d 1107, 1115 (6th Cir. 1996).

In establishing pretext, the plaintiff "may succeed . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. However, in order to withstand summary judgment, a plaintiff must come forward with evidence demonstrating that the defendant's articulated nondiscriminatory justification is not true. *Thurman v. Yellow Freight Sys*., 90 F.3d 1160, 1166 (6th Cir. 1996), *amended on denial of*

---

[4] This is a failure to hire case, not a discharge case. All of the former Blackhawk employees were terminated and had to re-apply for employment at Ventra.

*reh'g*, 97 F.3d 833 (6th Cir. 1996); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994).  To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence (1) that defendant's proffered reasons for the adverse employment action had no basis in fact, (2) the proffered reasons did not actually motivate the action, or (3) the reasons were insufficient to motivate the adverse action.  *Manzer*, 29 F.3d at 1082.

Plaintiff asserts that statements by Human Resource Manager, Diane Ravelli, constitute direct evidence of age discrimination.  Specifically, Plaintiff states that Ms. Ravelli often asked her why she didn't just retire when Plaintiff would return from an absence.  Also, Plaintiff contends that Ms. Ravelli told her friend, Mrs. McClish, that Plaintiff was too old for COBRA.  In the context of a discrimination claim, direct evidence "is evidence that proves the existence of a fact without requiring any inferences."  *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) *quoting Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d. 544, 548 (6th Cir. 2005). The evidence of such discriminatory conduct must be "of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely than not was a motivating factor in the employment decision." *Scott v. Potter*, 182 Fed. Appx. 521, 525-26 (6th Cir. 2006) (citations omitted.) Thus, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age," would constitute direct evidence of age discrimination. *See Carter v. Miami*, 870 F.2d 578, 582 (11th Cir. 1989).  Moreover, the statements (or conduct) showing a discriminatory attitude must be made by the person or persons involved in making the employment decision. *Coleman v. Fed. Express Corp.,* 2010 U.S. Dist. LEXIS 77667, at \*23-27 (E.D. Mich. Aug. 2, 2010); *Scott*, 182 Fed. Appx. at 525-26.  Even if Ms. Ravelli's statements

10

could be interpreted as statements "whose intent could be nothing other than to discriminate on the basis of age, " it is clear that she was not the decision maker in this case. Defendant has submitted undisputed evidence that Scott Tuel was the sole decision-maker and the only person who made the decision not to hire Mrs. Long. Plaintiff has offered no evidence to show that Ms. Ravelli had any input into that decision.

Defendant also contends that Plaintiff cannot establish her prima facie case under an indirect evidence framework. While conceding that Plaintiff fulfills the first three prongs of the prima facie case, Ventra asserts that Mrs. Long cannot demonstrate the fourth prong that a similarly situated person who was not in the plaintiff's protected class was hired for the job. Specifically, Defendant asserts that the persons who were hired, Ms. Smith and Mr. Miller, were not similarly situated to Plaintiff. Plaintiff contends that she was similarly situated to Ms. Smith and Mr. Miller in all respects except age.

In order to be deemed "similarly situated" for purposes of the prima facie case, "the individuals with whom the plaintiff seeks to compare his or her treatment must have (1) dealt with the same supervisor; (2) have been subject to the same standards; and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Plaintiff and Ms. Smith and Mr. Miller are similarly situated in all respects except their attendance records. Plaintiff asserts that because her absences were excused by her former employer for medical reasons and thus did not subject her to discipline somehow takes this difference out of the equation. As an employer evaluating potential new hires, Ventra looked at the number of hours or days missed, not the reason for such absences or

whether the former employer excused them.  While Plaintiff's absences were excused the sheer number of days missed far exceeded the time missed by her co-workers and in that respect they were not similarly situated.  Thus, Plaintiff has not established her prima facie case.

However, even if Plaintiff had established a prima facie case, Ventra has established a legitimate, non-discriminatory reason for failing to hire Plaintiff.  Poor attendance is a legitimate nondiscriminatory reason for an adverse employment action.  *See Peck v. Elyria Foundry Co.*, 347 Fed. Appx. 139, 146 (6th Cir. 2009); *King v. Tecumseh Pub. Sch.*, 2000 U.S. App. LEXIS 30683, at *5 (6th Cir. July 13, 2000). Review of the record shows that Plaintiff has not demonstrated that Defendant's stated reason for not hiring Plaintiff, her poor attendance record, was a pretext for age discrimination.  Specifically, Plaintiff has not demonstrated by a preponderance of the evidence (1) that defendant's proffered reasons for the adverse employment action had no basis in fact, (2) the proffered reasons did not actually motivate the action, or (3) the reasons were insufficient to motivate the adverse action.  *Manzer*, 29 F.3d at 1082.  Accordingly, Plaintiff's age discrimination claim under R.C. §4112 must fail.

## **CONCLUSION**

For the reasons set forth above, Defendant's  Motion for Summary Judgment  (ECF #22) is GRANTED.  This action is terminated.

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Date:  November 24, 2010